UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PAUL A. WILKIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| Vs. | ) | Jury Demand |
| | ) | |
| BERETTA USA CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**
_____

Comes now the Plaintiff, Paul A. Wilkin (hereinafter "Plaintiff"), by and through his undersigned counsel, Bob Lynch, Jr., and sets forth his claims for relief as follows:

## I.  INTRODUCTION:

The Plaintiff is seeking relief against Defendant, Beretta USA Corp. (hereinafter "Berretta" and/or "Defendant"), because, as more fully set forth below, he was discriminated and retaliated against because of his disability in violation of Americans with Disabilities Act as amended in 2008 (*see* 42 U.S.C. § 12201), and retaliated against for opposing unlawful employment practices.

## II.  JURISDICTION AND PARTIES:

1. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This court has venue pursuant to 28 U.S.C. § 1391.

1

2. At all times material herein, the Plaintiff was employed by the Defendant as a CMM[1] Metrologist.

3. The Defendant, Berretta USA Corp., is a for-profit corporation which is licensed to do business in the state of Tennessee. Its principal address is located at 17601 Beretta Drive, Accokeek, Maryland 20607-9515. Its registered agent is C Dale Allen and is located at 424 Church Street, Suite 2700, Nashville, TN 37219. Beretta operates a factory/engineering center located at 1399 Gateway Drive, Gallatin, TN 37066.

4. At all times material herein, the Plaintiff alleges that the doctrine of *respondeat superior* applies to the acts and omissions of the Defendant's employees and agents as alleged herein.

I. STATEMENT OF THE FACTS:

5. Prior to March 31, 2015, the Defendant recruited Plaintiff for the general position of CMM Metrologist. A metrologist is defined as a highly trained person who applies the science of weights and measurements to the manufacturing process.

6. Plaintiff accepted the terms and conditions of employment with Beretta and on or about March 31, 2015, he started his employment training at the Maryland facility located at 17601 Beretta Drive, Accokeek, Maryland 20607.

7. Subsequent to March 2015, Beretta built a new factory and engineering facility in Gallatin, Tennessee. After training completion and when production started at the new facility, the Plaintiff was transferred by Beretta to Gallatin, TN.

8. At all times material herein, when Plaintiff transferred to the facility in Gallatin and

---

[1] CMM = Coordinate Measuring Machine

during his employment in Tennessee, he resided at 1085 Karma Lane, Gallatin, TN 37066. Plaintiff currently resides at 804 Tree Crossings Parkway, Hoover, AL 35244.

9. Plaintiff suffers from an anxiety/depression mental disorder and he informed his supervisor, Chris Tzanakos (Director of Quality), that if his anxiety became too overwhelming, he would need to temporarily leave the immediate area and seek a quiet and safe space.

10. On March 15, 2016, the Plaintiff got into a dispute with a security guard about where he was to park his vehicle, which resulted in his anxiety increasing and he was required to go home to avoid the anxiety attack. Permission to do so was granted by his supervisor, Chris Tzanakos (hereinafter "Mr. Tzanakos").

11. On March 16, 2016, several Beretta employees, including Mr. Tzanakos, questioned the legitimacy of the Plaintiff's condition and denied him sick leave even though Plaintiff was suffering from symptoms related to his disability. In doing so, Robin Ecker (Sr. Human Resources Generalist) informed Plaintiff that he did not leave for a legitimate medical reason, but because he was having a temper tantrum.

12. On March 17, 2016, Plaintiff sent an email to his immediate supervisor, Kevin Lancto (Plant Quality Manager) stating that he wanted to file a harassment complaint against Robin Ecker (hereinafter "Ms. Ecker") because she had denied his request for sick leave rather than accommodate his mental disability. Almost immediately and on that same day, the Defendant reversed its position and granted him sick leave for the time required to go home and accommodate his disability.

13. On March 18, 2016, Plaintiff was called into a meeting with Mr. Tzanakos and Ms. Ecker, who informed him that he was being placed on administrative leave until he was

3

cleared for duty by the appropriate medical office.

14. The Plaintiff was required to wait five weeks to see the company-referred psychiatrist for an evaluation, and received paid time off.

15. On or about April 14, 2016, the Plaintiff was evaluated by Dr. Stephen A. Montgomery, M.D., who is board certified in general psychiatry and the subspecialty of forensic psychiatry. Dr. Montgomery prepared a "Psychiatric Fitness-For-Duty Evaluation" report concerning the Plaintiff's condition and provided it to the Defendant on or about April 19, 2016. (*A copy of Dr. Montgomery's report will be filed contemporaneously with this pleading as a sealed exhibit*).

16. Significant to this case, Dr. Montgomery found that the Plaintiff was suffering from a psychiatric condition, which occasionally interfered with his job performance but the disability could be accommodated by Beretta. Dr. Montgomery opined:

> "Mr. Wilkin's limitations are mild and not present continuously. Rather, they are present intermittently. The nature of the limitations is that when he experiences stress and frustration circumstances at work, he may need to remove himself from the situation until his emotions calm and he can cope with the stressor in a more adaptive fashion."

(*See* Sealed Exhibit, p. 3, #3).

17. After Dr. Montgomery cleared the Plaintiff to return to work subject to the limitations set forth in ¶15 above, the Plaintiff returned to work on April 25, 2016.

18. At all times material herein, Plaintiff was willing and able to perform his duties and functions of his position as CMM Metrologist. At no time would the performance of the required functions as a CMM Metrologist, with a reasonable accommodation for Plaintiff's mental disability as determined by the Defendant's own company-referred psychiatrist, be a danger to the Plaintiff or any other person's health or safety.

19. Accommodations of the Plaintiff's needs based on his anxiety/depression mental disorder would not have imposed an undue hardship on the Defendant.

20. The Plaintiff is an individual with a disability because his mental impairment substantially limits his major life activities, he has a record of the impairment, and the Defendant regarded him as having such an impairment.

21. Prior to the Plaintiff's return to work, he was notified by Alison Kotler (Director of Human Resources) that in light of Dr. Montgomery's diagnosis, when he returned to work he would need to meet with her and the corporate attorney to formalize the accommodation agreement for his disability. Upon his return to work, Plaintiff was not contacted by Alison Kotler (hereinafter "Ms. Kotler") about said meeting, so he emailed her about it, but did not receive a response. Plaintiff alleges that the Defendant is bound by the accommodation agreement, as recommended by Dr. Montgomery, and accepted by the Defendant because it allowed the Plaintiff to return to work subject to it and because his mental disability could be reasonably accommodated.

22. Upon the Plaintiff's return to work on April 25, 2016, he was released to full duty, but Mr. Tzanakos stripped him of his full job duties when he instructed Plaintiff not to operate the CMM machine, which he was hired and trained to do. Plaintiff alleges that this act by Mr. Tzanakos was both discrimination against him because of his mental disorder and retaliation against him because of his disability because the operation and use of the CMM machine has no bearing on his condition. Throughout Plaintiff's employment at Beretta, he continued to request permission from Mr. Tzanakos to operate the CMM machine, but Mr. Tzanakos continued to deny him access to it, thus diminishing the Plaintiff's job duties and causing/contributing to his anxieties.

23. From April 25, 2016 to July 5, 2016, Plaintiff successfully performed his job duties without anxiety attacks, although he was continually harassed by Mr. Tzanakos. This harassment included giving the Plaintiff meaningless tasks while mocking him in front of co-workers because Mr. Tzanakos joked that he did not want to upset Plaintiff with normal job tasks.

24. On July 6, 2016, Plaintiff was called to Human Resources because a co-worker had complained about the Plaintiff suffering an anxiety attack. This attack was triggered by an email from Mr. Tzanakos where he excluded the Plaintiff from job assignments, but assigned them to others. Plaintiff alleges that Mr. Tzanakos' failure to include him in job assignments which he could perform is another example of discrimination and retaliation. Plaintiff alleges he successfully diffused the anxiety attack with the co-worker and immediately returned to his desk, telephoned his therapist, and made an appointment that day.

25. After this event, Mr. Tzanakos transferred Plaintiff to second shift, which had not existed before. Plaintiff's job duties continued to be meaningless and limited, despite his qualifications as a CMM Metrologist, and he often worked alone in the facility. Although Plaintiff was now working second shift, Mr. Tzanakos would stay later during the day and continued to directly harass him by stating that the Plaintiff reminded him of his ex-wife because she also suffered from anxiety. Also, Mr. Tzanakos questioned the Plaintiff about how his mental disorder affected his relationship with his wife.

26. On August 4, 2016, Plaintiff sent an email to Ms. Kotler documenting Mr. Tzanakos' harassment and prejudicial actions. On August 8, 2018, Ms. Kotler confirmed receipt of Plaintiff's email/human resources complaint and stated "…allow me to have a few days

to look into this situation further. I will be in touch with you by the end of this week."

27. On August 15, 2016, Plaintiff had not heard back from Ms. Kotler so he emailed her. On the same date, Ms. Kotler informed Plaintiff that Jeff Reh (General Counsel) would be investigating the matter and would contact him. (*Attached hereto as Exhibit 1 are emails between Ms. Kotler and Plaintiff, which documents events listed in ¶'s 21 -22 above*).

28. On August 22, 2016, Plaintiff again emailed Ms. Kotler because he did not hear back from Human Resources or Jeff Reh (hereinafter "Mr. Reh"). On that same date, Ms. Kotler emailed Plaintiff back and stated:

> "I informed you that Jeff Reh, General Counsel, is now investigating the matter. To that point, he will be in Gallatin tomorrow. As I stated before you are welcome to reach out to him at any time to discuss with him directly."

> *(Attached hereto as Exhibit 2 is the August 22, 2016 email from Ms. Kotler to Plaintiff).*

29. Thereafter, Mr. Reh did not contact and/or meet with Plaintiff as promised in connection with his August 4, 2016 complaint with Human Resources against Mr. Tzanakos for harassment. When Mr. Reh failed to contact the Plaintiff about this complaint, Plaintiff emailed him on August 24, 2016, and on August 25, 2016, Mr. Reh unreasonably dismissed his complaint and stated:

> "I told Alison I would assess the situation when I was in Gallatin, which I did. I had already seen your complaint about Chris before my visit so I wanted to meet with Chris to also get his side of the story.

> The strong impression I came away with after talking to Chris is that, far from being prejudicial against you, he cares about you and wants to help you continue with your job in a professional and responsible manner. Based on my discussions with him I was satisfied that it is certainly not his intent, in word or deed, to do anything but help ensure you are and remain a capable and dependable employee."

> *(Attached hereto as Exhibit 3 is the August 25, 2016 email from Mr. Reh to Plaintiff.)*

7

30. The Plaintiff alleges that the failure of Ms. Kotler and Mr. Reh to resolve his complaint about Mr. Tzanakos' harassment constitutes discrimination and retaliation.

31. From August 31, 2016 until September 8, 2016, Plaintiff became increasingly stressed and aggravated as a result of Mr. Tzanakos' harassment and the failure of the Defendant to address and fully accommodate his disability.

32. On September 8, 2016, Plaintiff returned to Ms. Ecker's office where he experienced an anxiety attack. An employee from Human Resources told the Plaintiff to take the rest of the day (Thursday) off and also the next day (Friday) and he would be charged with vacation pay.

33. On September 12, 2016, Ms. Kotler telephoned and emailed the Plaintiff to inform him that he was being terminated due to his September 8th actions at Human Resources. When Plaintiff questioned Ms. Kotler on the phone about why he was being terminated, she informed him that it was because he looked visibly upset. (*Attached hereto as Exhibit 4 is the September 12, 2016 email from Ms. Kotler to Plaintiff*).

34. Plaintiff alleges that the proffered reason for his termination from Beretta is a pretext. The real reason for Plaintiff's termination is his mental disability and the Defendant's hostility toward him because of it.

35. On September 13, 2016, Plaintiff emailed Ms. Kotler and requested a letter of separation and the reason for his termination and the Defendant did not reply to his email request. (*Attached hereto as Exhibit 5 is said email*).

36. On September 16, 2016, the Defendant emailed Plaintiff and directed him to pick up his personal items from Beretta on September 17th (Saturday). (*A copy of the September 16, 2016 email is attached as Exhibit 6*).

37. On September 16, 2016, Plaintiff filed his Charge of Discrimination (No. 494-2016-01988) with the Equal Employment Opportunity Commission (hereinafter "EEOC") (*Attached hereto as Exhibit 7*).

38. On September 14, 2018, the EEOC issued a Dismissal and Notice of Rights. (*Attached hereto as Exhibit 8*).

39. Plaintiff alleges that the facts set forth above constitutes willful violations of the Americans with Disabilities Act of 1990 and constitutes retaliation against him for opposing unlawful employment practices.

### IV.     PRAYER FOR RELIEF:

WHEREFORE, the Plaintiff having set forth his claims above hereby prays for the following relief:

1. Compensatory damages, in an amount to be determined by the jury, because the Plaintiff has suffered emotional distress, pain and suffering, and loss to his reputation;

2. Punitive damages, in an amount to be determined by a jury, because the Defendant, as alleged above, acted knowingly, intentionally, fraudulently, recklessly, and maliciously in violation of federal anti-discrimination laws and its persistent failure and indifference to remedy a situation in which the Plaintiff's rights were continually violated;

3. Reinstatement of the Plaintiff to his former position as a CMM Metrologist, and if this is not reasonable or appropriate, front pay in an amount to be determined by a jury;

4. Pre-judgment interest and post-judgment interest;

5. Attorney's fees and costs;

6. Injunctive and declaratory relief to which the Plaintiff is entitled;

7. For any general relief to which the Plaintiff is entitled, including make-whole relief to restore the Plaintiff as nearly as possible to the positon he would have occupied absent the discrimination and retaliation; and

8. A jury to hear this cause.

                                                Respectfully Submitted,

                                                */s/ Bob Lynch, Jr.*
                                                **Bob Lynch, Jr. (BPR# 6298)**
                                                **Washington Square, Suite 316**
                                                222 Second Avenue North
                                                Nashville, TN 37201
                                                Phone: 615-255-2888
                                                Email: office@boblynchlaw.com
                                                *Attorney for Plaintiff Wilkin*